UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL W. KENNY, an individual,

*Plaintiff,*

vs.

CRITICAL INTERVENTION
SERVICES, INC., a Florida corporation;
KARL C. POULIN, an individual,

*Defendants.*

CASE NO:

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff, MICHAEL W. KENNY ("Mr. Kenny"), through undersigned counsel, files this Complaint for damages against Defendants, CRITICAL INTERVENTION SERVICES, INC. ("CIS"), a Florida corporation, and KARL C. POULIN ("Poulin") (collectively "Defendants"), and in support thereof alleges:

**INTRODUCTION**

1. Mr. Kenny brings this action against his former employer, CIS, and CIS's President and CEO, Poulin, for their willful and continuous violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et. seq. ("FLSA").

2. CIS is a private security company. In many ways, CIS styles itself as a police force: From terminology and chain of command structure to uniforms and equipment, CIS's business is predicated on blurring the line between private security and government law enforcement. But CIS is not a police force. It is motivated not by a duty to protect and serve, but by money.

3. CIS emphasizes hiring military veterans in an attempt to portray itself as a good samaritan. That is not the case. CIS routinely exploits military veterans as a marketing ploy, fails to

properly compensate them, and attempts to stop them from utilizing their state-required licenses at any other security company through non-compete agreements they are required to sign upon hiring.

4. As a pattern and practice, Defendants require new hires that do not possess state-required licensing—totaling, at minimum, seventy (70) hours—to obtain such licensing at CIS's sister company, the S2 Safety & Intelligence Institute ("S2"). Poulin is the CEO of S2. New hires such as Mr. Kenny are told that CIS will provide a "loan" in lieu of compensation for licensing training. Mr. Kenny's "loan" was to be forgiven if he remained with the company for a designated amount of time. CIS has attempted to collect on that "loan" from Mr. Kenny because he was unable to remain employed by CIS. Regardless of terminology, Mr. Kenny's time is compensable for such training.

5. Indeed, had CIS actually covered Mr. Kenny's costs for the licensing, CIS would still be in violation of the FLSA's regulations concerning minimum wage.

## JURISDICTION AND VENUE

6. This Court has subject matter judication with respect to Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331.

7. Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because the Defendants are subject to personal jurisdiction in this District and because the acts giving rise to the claims occurred in this District.

## PARTIES

8. Plaintiff Mr. Kenny is a Florida resident with a permanent residence in Pasco County, Florida. From January 13, 2017, through February 22, 2017, Mr. Kenny was Defendants' employee within the meaning of 29 U.S.C. § 203(e).

9. Defendant CIS is a Florida for-profit corporation organized and existing under the laws of Florida with a principal place of business in Pinellas County at 13777 Belcher Road South, Largo, Florida 33771. CIS is an employer within the meaning of 29 U.S.C. § 203(d).

10. At all times material, CIS was an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203. CIS provides security and security related services to individuals, businesses, industries, and government agencies in both national and international markets. Additionally, upon information and belief, Defendant CIS grossed in excess of $500,000.00 per annum for the relevant time period.

11. Defendant Poulin is an individual who resides in Pinellas County, Florida, who was, and now is, an owner, the President, and CEO of CIS. As CIS's owner, President, and CEO, Defendant Poulin had, at all times material, operational control over significant aspects of CIS's day-to-day functions, including the compensation and scheduling of employees. Defendant Poulin also had direct responsibility for the supervision of employees. Defendant Poulin is an employer within the meaning of 29 U.S.C. § 203(d).

## GENERAL ALLEGATIONS

12. CIS hired Mr. Kenny as an armed protection officer on January 13, 2017. From that date forward, all aspects of Mr. Kenny's daily responsibilities were tightly managed by Defendants and the extensive corporate policies, procedures, and practices they enacted.

13. On the date of his hire, Mr. Kenny signed a "Letter of Training and Payment Agreement." *See* "Agreement" attached hereto as Exhibit "A". The Agreement states that "CIS will provide a loan to me, as an **ADVANCE ON MY PAY**, to cover the initial payments for the training as indicated in the table immediately below. These payments will be made directly to the vendor supplying these services." The amount totaled $305.00 ($115.00 for D licensing and $190.00 for G licensing). The amounts for each separate class were not handwritten, but rather typed into the Agreement by CIS.

14. The Agreement goes on: "If I remain employed by CIS for a period of 120 calendar days after the date I first begin working full time hours, or the date in which this document is fully

executed, whichever comes later, CIS will forgive the loan, assuming all of the costs indicated in section I, above."

15.     Mr. Kenny did not last 120 days. As a single father, Mr. Kenny was forced by CIS to resign on February 22, 2017, as CIS would not accommodate shift changes Mr. Kenny needed so he could care for his young daughter.[1]

16.     After CIS hired Mr. Kenny, he received the "New Hire Class Dates and Procedures", which provided his training and orientation schedule, including the seventy (70) hours of training necessary to complete the D and G licensing courses. *See* New Hire Class Dates and Procedures, attached hereto as Exhibit "B".

17.     CIS scheduled Mr. Kenny to attend S2's D licensing course from January 16, 2017, through January 19, 2017. S2's D licensing classes were held each day from 8 AM until 6 PM. *See* Ex. B.

18.     On January 19, 2017, S2 awarded Mr. Kenny a "Certificate of Completion" for the D license class, stating that he had "complete[d] [the] 40 hours of Unarmed Security Officer training as prescribed by Chapter 493 Florida Statutes[.]" *See* Certificate of Completion, attached hereto as Exhibit "C".

19.     CIS scheduled Mr. Kenny to attend S2's G licensing course from January 20, 2017, through January 22, 2017. S2's G licensing classes were held each day from 8 AM until 6 PM. *See* Ex. B.

20.     Mr. Kenny's attendance at S2's D and G licensing courses was mandatory.

---

[1] The events surrounding Mr. Kenny's departure are explained in greater detail in a lawsuit presently pending in the Pinellas County Court. *See Michael W. Kenny v. Critical Intervention Services, Inc.*, Case No. 17-004512-CI (Fla. 6th Jud. Cir. 2017). That suit is based on CIS's attempt to enforce an invalid restrictive covenant against Mr. Kenny after he was pushed out of CIS.

21. Mr. Kenny was not given the option to attend any training facility other than S2.

22. If Mr. Kenny did not attend the training, his employment with CIS would have been terminated.

23. Mr. Kenny's D and G licensing training was for the benefit of CIS and CIS alone. CIS continuously attempts to enforce non-compete agreements against its former employees such as Mr. Kenny. In other words, after a CIS employee successfully completes his S2 licensing training, it is CIS's position that the employee is unable to utilize his licenses at any other security company for a period of two (2) years.

24. S2 is one of many training facilities licensed by the Florida Department of Agriculture and Consumer Services to provide the D and G license courses. There are several other such training facilities located within Pinellas County.

25. The critical difference between S2 and other training facilities: S2 was created by Poulin.

26. Mr. Kenny attended the D and G licensing courses during his regular working hours, as these were his shifts at the time.

27. The D and G licensing courses were directly related to Mr. Kenny's job as an armed CIS protection officer.

28. CIS and Poulin failed to compensate Mr. Kenny for the time he spent in the D and G licensing training.

29. CIS purported to sponsor Mr. Kenny's D and G license course fees (an amount totaling $305), but has since charged Mr. Kenny full price for the courses.

30. Even if CIS had sponsored Mr. Kenny's D and G license course fees, his hourly rate for the time spent in training would amount to approximately $4.36, well below the federally

mandated minimum wage.

31. However, CIS did not sponsor Mr. Kenny's D and G license course fees. In fact, CIS forced Mr. Kenny to sit through 70 hours of unpaid training.

32. Defendants' unlawful conduct was pursuant to a corporate policy and practice that included minimizing labor costs and maximizing profits by denying Mr. Kenny and others appropriate pay for time spent in mandatory training.

33. Defendants' unlawful conduct has been widespread, repeated, and consistent.

34. Defendants' unlawful conduct has been intentional, willful, and in bad faith, and has caused damages to Mr. Kenny.

## COUNT I – VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (Unpaid Minimum Wage – as to all Defendants)

35. Plaintiff repeats and realleges Paragraphs 1-34 as if fully set forth herein.

36. Defendants failed to provide any compensation for Mr. Kenny's attendance at the mandatory licensing training.

37. The D training consisted of a total of forty (40) hours over the course of four (4) days, ten (10) hours per day.

38. The G training consisted of a total of thirty (30) hours over the course of three (3) days, ten (10) hours per day.

39. Defendants failed to compensate Mr. Kenny at or above the statutory minimum wage for the time spent in mandatory training; Defendants failed to compensate Mr. Kenny entirely.

40. Defendants' minimum wage violations of the FLSA were willful and intentional. Defendants were or should have been aware that their practices with regard to the compensation of Mr. Kenny violated the minimum wage provisions of the FLSA.

41. As a direct and proximate result of Defendants' willful violation of the FLSA, Mr.

Kenny is entitled to compensatory and liquidated damages pursuant to the FLSA.

**WHEREFORE**, Plaintiff respectfully seeks the following relief against Defendants CIS and Poulin:

a. Damages in an amount to be determined for all of Plaintiff's unpaid minimum wages;

b. Liquidated damages in an amount equal to Plaintiff's unpaid minimum wages;

c. Plaintiff's reasonable attorneys' fees and costs and expenses of this litigation pursuant to 29 U.S.C. § 216(b);

d. Pre-judgment and post-judgment interest; and

e. Such other relief as this Court shall deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims.

Dated: September 7, 2018

Respectfully submitted,
By: s/ *Jonathan Pollard*
Jonathan Pollard
Florida Bar No.: 83613
jpollard@pollardllc.com
**TRIAL COUNSEL**

Christopher S. Prater
Florida Bar No.: 105488
cprater@pollardllc.com

**Pollard PLLC**
401 E. Las Olas Blvd.
#1400 Fort Lauderdale, FL 33301
Telephone: 954-332-2380
Facsimile: 866-594-5731
*Attorneys for Plaintiff*